IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DEVON LEO PORTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-074 |
| | ) | |
| WARDEN JERMAINE WHITE; | ) | |
| JACOB BEASLEY; VERONICA | ) | |
| STEWART; RICKY WILCOX; DOCTOR | ) | |
| DAVID CHENEY; TIMOTHY C. WARD; | ) | |
| ROBERT TOOLE; and TONJA KEITH, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Telfair State Prison ("TSP"), filed this case pursuant to 42 U.S.C. § 1983. Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.      SCREENING THE COMPLAINT**

    **A.      BACKGROUND**

Plaintiff names the following Defendants: (1) TSP Warden Jermaine White; (2) Deputy Warden of Security Jacob Beasley; (3) Deputy Warden of Security Veronica Stewart; (4) Unit Manager Ricky Wilcox; (5) Dr. David Cheney; (6) Georgia Department of Corrections ("GDC") Commissioner Timothy C. Ward; (7) GDC Director of Operations of Facilities Robert Toole; and

(8) Deputy Warden Tonja Keith. (Doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

When Plaintiff arrived at TSP from Georgia State Prison ("GSP") in March 2021, he was placed in Dorm A1 and a lockdown occurred only two or three days after his arrival. (Id. at 5.) Just after the lockdown ended, Plaintiff alerted Defendant Stewart and CERT Officer Riles of his epilepsy and hypertension and provided Defendant Stewart with his I.D. and incarceration history. (Id.) When Defendant Stewart discovered Plaintiff had also informed Officer Riles of this health information, she stated "Now since you want to tell someone else, I ain't doing nothing." (Id. at 6.) Plaintiff told her, "I don't even know who you are," and she responded, "You're gonna find out." (Id.)

On May 8, 2021, Plaintiff's dorm was in lockdown again, and Defendant Wilcox came into the dorm to pass out breakfast. (Id.) Plaintiff told Defendant Wilcox he had a seizure while sleeping and needed medical attention. (Id.) Defendant Wilcox "slammed the door" in Plaintiff's face and told Plaintiff no one could help him at that time because TSP is a twelve-hour medical facility. (Id.) Plaintiff filed a grievance against Defendant Wilcox, who admittedly did not record his dispute with Plaintiff in the admin logbook. (Id.) Plaintiff did not receive medical treatment for his seizure at that time. (Id.)

Plaintiff alleges there are no floor or booth officers or functioning call-alert boxes in any of the dormitories at TSP, and prison staff are only present in Dorm A1 for five minutes at a time to conduct body counts and deliver trays. (Id. at 5, 7.) Plaintiff also alleges staff do not conduct wellness rounds and body checks as they are required. (Id. at 7.) Inmates have had to kick the main door of Dorm A1 and yell from cell windows in order to get the attention of prison staff

during medical emergencies. (Id.) Plaintiff says it is fortunate Dorm A1 is at least within an earshot of the C.E.R.T. office.

Between late June and early July 2021, Plaintiff was moved to the inferior Dorm C1, a dorm referred to as "the trenches" due to its distance from TSP's main office and infrequency of staff visits. (Id. at 7.) Plaintiff claims he was moved "for no apparent reason," but implies the relocation was connected to his many grievances and requests for medical treatment. (Id.) Plaintiff contrasts dorms C1 and A1 to show he is now further away from "any available help." (Id.) At some point, Defendants White and Beasley visited C building, and Plaintiff asked about his medical treatment and lack of staffing and requested transfer to a twenty-four-hour medical facility. (Id. at 8.) Defendant White responded, "The best thing I can tell you . . . is to check yourself into the hole so you'll have an officer on top of you in the event of your having a seizure." (Id.) Plaintiff moved into the hole in building E. (Id.) In August 2021, when Plaintiff presumably was no longer in the hole, Plaintiff recapped his medical issues and staffing concerns to Defendants White and Beasley when they visited his dorm. (Id. at 10.) When Plaintiff mentioned Defendant White previously told him to check into the hole, Defendant White laughed and said "You went for that? . . . . I was just being facetious." (Id.)

Also in August 2021, Plaintiff alerted prison staff and pill call nurses he was having headaches and eye pressure problems, so he needed refills of his hypertension and epilepsy medicine. (Id. at 8.) His previous requests were pending and unanswered for a month. (Id.) Plaintiff passed out in the shower on August 11, 2021, due to prehypertension. (Id.) Medical staff, including Defendant Cheney, evaluated him and determined he had high blood pressure. (Id.) Plaintiff alleges Defendant Cheney then "disregarded" his high blood pressure, and "pumped" him

3

with seizure medicine. (Id. at 9.) They told him his blood pressure was "okay" and sent him back to his dorm without medicine or any attempt to lower his blood pressure. (Id.)

Plaintiff continued to experience numbing and tingling in his right side and eye pressure, but his complaints to security and medical staff members were disregarded. (Id.) On August 24, 2021, Plaintiff's right side went numb, and he was able to get into his bed without assistance. (Id.) He alerted a prison officer but was told medical staff would not arrive until later. (Id.) C.E.R.T. Officer Monsler then instructed Plaintiff to get up from his bed for an inspection, and Plaintiff's cell mate said Plaintiff could not move. (Id.) Officer Monsler told Defendant Beasley, who told Defendant Thomas, who called in Nurse Jackson, who called in Defendant Cheney. (Id.) Nurse Jackson initially thought Plaintiff was having a heart attack, and Defendant Cheney immediately took Plaintiff to medical and determined Plaintiff was in stage two of hypertension. (Id.) Upon Defendant Cheney and Thomas' instructions, C.E.R.T. Officer Garner and C.O. II Smith took Plaintiff to the hospital for a CT scan. (Id. at 10.) Plaintiff returned to TSP, but on August 27, 2021, Sgt. Wooten and Sgt. Thomas escorted Plaintiff to the hospital again for an EEG brain scan. (Id.) By this time, Plaintiff was also enrolled in the Chronic Illness Clinic for epilepsy and hypertension, though he maintains his high blood pressure was still being disregarded. (Id.)

On April 4, 2022, Plaintiff alerted a floor officer in Dorm D2 he was experiencing tingling and numbness in his left arm, but he received no response for three weeks. (Id. at 11.) On April 15, 2022, an inmate made a phone call to Plaintiff's attorney, Ms. Ganem, which prompted a visit to medical. (Id.) Plaintiff was placed on an EKG by Nurses Faskey and Murray, found to have symptoms of a heart attack again, and sent to the hospital. (Id.) Plaintiff had high blood pressure, and a toxic tropidine level "which stemmed from [Defendant Cheney] not adhering to the protocols of the . . . chronic illness clinic." (Id. at 12.) Several times, Plaintiff has asked Defendant Cheney

4

for transfer to a twenty-four-hour medical facility, but Defendant Cheney always responds by explaining all facilities are understaffed and "laughs with some smart aleck or retort" when Plaintiff reiterates his need for twenty-four-hour care. (Id. at 11.) On April 21, 2022, Ms. Ganem told Defendant White by email of Plaintiff's poor medical treatment. (Id.)

On April 28, 2022, Plaintiff told Defendant White he received no response for three weeks to his inquiry to a Dorm D2 floor officer, meaning his April visit to medical could have been avoided if the prison had listened. (Id.) Defendant White became frustrated and yelled at Plaintiff, "I ain't going to baby you. I spoke with Ms. Young." (Id.) Plaintiff threatened to call an attorney, and Defendant White said, "I don't give a fuck about no lawyer . . . now say anything else and I'll get your ass sprayed too." (Id.) During an inspection on May 3, 2022, Defendant White instructed Defendant Wilcox and S.T.G. Brown to search Plaintiff, his cellmate, and his cell. (Id. at 13.) Plaintiff alleges the May 3rd search was retaliation.

Defendant Ward made numerous trips to each dorm at TSP in order to promote vaccines, and he consistently "disregards the fact that none of the housing unites [at TSP] have neither floor or booth officers to maintain security." (Id. at 11.) Defendant Toole also visited TSP between October 23 and 25, 2021, and also disregarded the staffing issues. (Id.)

Defendant Wilcox's wife is a grievance coordinator at TSP, their son is a C.E.R.T. officer, and other family members work at TSP. (Id. at 13.) This creates a conflict of interests that has led to incidents not being recorded and Plaintiff's grievances not being addressed. (Id.)

Plaintiff asserts three legal claims: (1) deliberate indifference to serious medical needs by all Defendants except Ward and Toole; (2) failure to protect and intervene by all Defendants except Stewart; and (3) retaliation against Defendant White. (Id. at 14-15.) He sues all Defendants in their individual capacities. (Id. at 17.)

5

## B. DISCUSSION

### 1. Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

6

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

>    2.   **Plaintiff Fails to State a Claim for Deliberate Indifference to Serous Medical Need Against Defendants Beasley, White, Stewart, Cheney, and Keith**

To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege: (1) he had a serious medical need—the objective component, (2) a defendant acted with deliberate indifference to that need—the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010).

To satisfy the objective component, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). To satisfy the subjective component, Plaintiff must allege that a defendant (1) was subjectively aware of a serious risk of harm and (2) disregarded that risk (3) by following a course of action which constituted more than mere negligence. Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to

the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

Moreover, the Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference. Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010). Furthermore, the Court should not second-guess medical judgments. Wallace v. Sheriff, 518 F. App'x 621, 622-23 (11th Cir. 2013); Smith, 375 F. App'x at 910 ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment.").

First, Plaintiff fails to state a claim against Defendant Cheney. Defendant Cheney cared for Plaintiff twice, first by providing seizure medicine to Plaintiff after he passed out in the shower, and then by seeing Plaintiff after his second hypertension episode. After the second

8

time seeing Plaintiff, Defendant Cheney ordered he go to the hospital for a CT scan, and Plaintiff was enrolled in a Chronic Illness Clinic for his hypertension. This treatment was not deliberately indifferent. While Plaintiff argues Defendant Cheney should have followed undescribed protocols and paid more attention to his high blood pressure, his dispute with Defendant Cheney is simply a dispute over medical judgment and Plaintiff's preferred course of treatment. As explained, such disagreements do not state a claim for deliberate indifference.

Plaintiff also fails to state a claim against Defendants Beasley and White. Plaintiff only connects Defendants Beasley and White to one event related to his medical care: he told them generally of his medical issues twice when they visited C building. Defendants Beasley and White did not disregard any serious risk to Plaintiff's health by merely being informed of Plaintiff's medical conditions. In fact, Defendant Beasley helped Plaintiff receive medical attention later on August 24, 2021. While Defendant White showed flippancy regarding Plaintiff's health fears by suggesting Plaintiff go to the hole to receive closer supervision, Plaintiff's allegations against him still do not show Defendant White took any act or omission disregarding any specific risk to Plaintiff's health or that Plaintiff suffered injuries as a result.

Similarly, Plaintiff fails to state a claim against Defendant Stewart. He merely alleges informing her of his medical history upon arrival to TSP in March 2021, and she became indignant when she learned he told another officer about his medical issues. While she was aware of his serious medical needs, Plaintiff does not allege any act or omission by her regarding his medical care at TSP, let alone an act or omission that could constitute deliberate indifference. Nothing in the complaint shows Defendants White, Beasley, or Stewart were present or aware of his subsequent seizures, so nothing in the complaint shows they acted with reckless disregard for Plaintiff's health.

Plaintiff also does not state a deliberate indifference claim against Defendant Keith, whom he names once in the complaint by simply saying she was deliberately indifferent to his serious medical needs. Such factually devoid allegations will not suffice. Iqbal, 556 U.S. at 678.

### 3. Plaintiff Fails to State a Valid Conditions of Confinement or Failure to Protect Claim Based on Allegations of Limited Security

"[T]he Constitution does not mandate comfortable prisons." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Rather, the Eighth Amendment requires that prisoners are afforded adequate food, clothing, shelter, and medical care, and prison officials must take reasonable measures to ensure prisoner safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "An excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm," and "confinement in a prison where violence and terror reign is actionable." Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014).

Challenges to conditions of confinement are subject to a two-part analysis. Chandler, 379 F.3d at 1289. First, Plaintiff must satisfy an objective prong by showing the conditions about which he complains are sufficiently serious. Id. The conditions of his confinement must be "extreme" such that it "poses an unreasonable risk of serious damage to his future health or safety." Id.; see also Ivory v. Warden, 600 F. App'x 670, 676-77 (11th Cir. 2015) (*per curiam*); Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (*per curiam*). "The risk must be 'so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'" Redding v. Georgia, 557 F. App'x 840, 843 (11th Cir. 2014) (*per curiam*) (citing Helling v. McKinney, 509 U.S. 25, 33 (1993)).

Second, Plaintiff must satisfy a subjective prong by showing that Defendants acted with a culpable state of mind, which is judged under a "deliberate indifference" standard. Chandler, 379 F.3d at 1289. "Proof of deliberate indifference requires a great deal more than does proof of negligence." Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013). The prison official must know of and disregard an "excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Id.

Plaintiff's conditions of confinement claim has not shown the staffing issues described in his complaint rise to the level of violating contemporary standards of decency. His claims revolve around general staffing issues at TSP and Plaintiff's generalized assertion that procedures and staffing do not satisfy his subjective standard. For example, he generally claims Dorms A and C are understaffed, staff do not conduct wellness and body checks frequently enough, housing units have neither floor nor booth officers, and call-alert boxes do not work. Additionally, Plaintiff complains TSP is not a twenty-four-hour medical facility, which he believes he requires.

Plaintiff cites no specific attacks, other than incidents involving other inmates that presumably led to the lockdowns, and he has not been the victim of any acts of violence due to the complained of staffing inadequacies. His complaint fails to state a claim for conditions of confinement because "the Eighth Amendment does not require the uninterrupted personal supervision of all inmates." Estate of Owens v. GEO Group, Inc., 660 F. App'x 763, 773 (11th Cir. 2016) (*per curiam*); see also Purcell v. Toombs Cnty., 400 F.3d 1313, 1323 n.23 (11th Cir. 2005) ("The Constitution does not require that every inmate in a jail be observed by a

guard every twenty minutes."); Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995) (finding that failure by jailer to check on "bullpen" of inmates during one hour prior to assault insufficient to show deliberate indifference); Harrison, 746 F.3d at 1299-1300 (explaining "occasional, isolated attacks by one prisoner on another" does not necessarily constitute cruel and unusual punishment).

For similar reasons, Plaintiff's complaint fails to state a failure to protect claim. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate may violate the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted). Accordingly, a prison inmate has a constitutional right to be protected from violence and from physical assault by other inmates. Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*); Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981). When officials become aware of a threat to an inmate's health and safety, the Eighth Amendment imposes a duty to provide reasonable protection. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*). However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials." Gullatte, 654 F.2d at 1012. "[T]here must be at least some allegation of a conscious or callous indifference to a prisoner's rights" that would raise the tort to the level of a constitutional violation in order to state a section 1983 cause of action against prison officials for cruel and unusual punishment. Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (citations omitted).

"Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate on inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'" Terry v. Bailey,

376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) (citing Farmer, 511 U.S. at 833-34).  To establish an Eighth Amendment claim, a prisoner "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted).  These three elements are evaluated in part by an objective standard and in part by a subjective standard.  See Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019) (*per curiam*).

> As the Eleventh Circuit explained,
>
> When examining the first element—a substantial risk of serious harm—the court uses an objective standard.  The second element—the defendant's deliberate indifference to that risk—has two components:  one subjective and one objective.  To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm.  To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (internal citations and quotations omitted).

Mere negligent failure to protect an inmate from an attack does not justify § 1983 liability.  Brown, 894 F.2d at 1537.  Stated otherwise, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk.  Farmer, 511 U.S. at 835-39; see also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere negligence," and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith.").

Plaintiff has not alleged any Defendant consciously disregarded a specific, personal,

13

serious, and imminent risk. He has suffered no injuries and has identified no specific threat from which a Defendant has failed to protect him. See Marbury, 936 F.3d at 1233 (explaining Eighth Amendment violation requires deliberate indifference "to substantial risk of serious harm to an inmate who suffers injury"). He merely wishes the prison had more medical and security staff, but such concerns do not violate the Eighth Amendment in this case. His complaint therefore fails to state a failure to protect or conditions of confinement claim against any Defendant.

### 4. Plaintiff Fails to State a Retaliation Claim

To prevail on a retaliation claim, Plaintiff must establish that: "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (citation and quotation marks omitted). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). However, "[t]o establish a retaliation claim under the First Amendment, a prisoner must show a causal connection between his protected speech and the harm of which he complains." Smith v. Villapando, 286 F. App'x 682, 685 (11th Cir. 2008).

Additionally, a complaint must contain enough facts to state a claim of retaliation that is plausible on its face. Id. (citing Twombly, 550 U.S. at 554). A prisoner may state a cognizable § 1983 claim by alleging the actions of prison officials "that might not otherwise be offensive to the Constitution" may be brought "within the scope of the Constitution by

alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances." Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). In Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005), the Eleventh Circuit clarified the standard for asserting a cognizable retaliation claim: "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights." Id. at 1254.

Plaintiff does not adequately allege a causal connection between the activity in question and the retaliatory action. Plaintiff alleges Defendant White retaliated against him by searching his cell on May 3, 2022, after Plaintiff threatened to talk to an attorney about his medical treatment in prison five days prior. While the Court has explained ordinary prison activities may still constitute unconstitutional retaliation, Plaintiff's allegations provide no basis to show the May 3rd search was done in retaliation. The mere fact that Plaintiff *and* his cell mate where searched five days after Plaintiff's argument with Defendant White does not indicate the search was in response to Plaintiff's threatened legal actions. Searches are a routine prison procedure, and Plaintiff has not alleged facts that show, for example, Defendant White would not have acted as he did even absent Plaintiff protected conduct. See O'Bryant, 637 F.3d at 1218. In sum, Plaintiff's claims of retaliation are conclusory and do not raise his allegations of retaliation beyond a speculative level. See Smith v. Florida Dep't of Corr., 375 F. App'x 905, 911 (11th Cir. 2010) (*per curiam*) (finding conclusory allegations of retaliatory motive insufficient to raise allegation of retaliation above speculative level) (citing Iqbal, 556 U.S. at 680).

## II.     CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** (1) the claims for deliberate indifference to serious medical need against Defendants White, Beasley, Stewart, Cheney, and Keith, (2) the failure to protect and conditions of confinement claims against all Defendants, and (3) the retaliation claim against Defendant White be **DISMISSED** for failure to state a claim upon which relief may be granted.  As these are the only claims raised against Defendants White, Beasley, Stewart, Cheney, Ward, Toole, and Keith, these Defendants should be **DISMISSED** from the case.  By separate Order, the Court directs service of process on Defendant Wilcox based on Plaintiff's allegations of deliberate indifference to serious medical needs.

SO REPORTED and RECOMMENDED this 5th day of October, 2022, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA